**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**COLBERT FRANKLIN**                                      **CIVIL ACTION**

**versus**                                                          **NO. 07-543**

**T.W. THOMPSON, WARDEN**                        **SECTION: "F" (3)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Franklin Colbert, is a state prisoner incarcerated at the J. Levy Dabadie Correctional Center, Pineville, Louisiana.  On April 6, 1999, he was convicted of distribution of cocaine.[2]  On September 30, 1999, he was sentenced to a term of twenty-five years imprisonment with credit for time served.[3]  On February 13, 2002, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[4]  He then filed with the Louisiana Supreme Court related writ applications which were denied on November 1, 2002,[5] and April 25, 2003.[6]

On October 29, 2003, petitioner filed with the state district court an application for post-conviction relief.[7]  After an evidentiary hearing, that application was denied on July 21, 2005.[8]  He next filed with the Louisiana Fourth Circuit Court of Appeal an application for supervisory writs[9]

---

[2] Supplemental State Rec., Vol. II of II, transcript of April 6, 1999, p. 186; State Rec., Vol. II of II, minute entry dated April 6, 1999; State Rec., Vol. II of II, jury verdict form.

[3] State Rec., Vol. I of II, minute entry dated September 30, 1999; State Rec., Vol. II of II, Reasons for Sentencing dated September 30, 1999.

[4] State v. Franklin, No. 2000-KA-2097 (La. App. 4th Cir. Feb. 13, 2002) (unpublished); State Rec., Vol. I of II.

[5] State v. Franklin, 828 So.2d 564 (La. 2002) (No. 2002-K-0716); Supplemental State Rec., Vol. I of II.

[6] State v. Franklin, 842 So.2d 391 (La. 2003) (No. 2002-KO-1308); Supplemental State Rec., Vol. I of II.

[7] State Rec., Vol. I of II.

[8] Supplemental State Rec., Vol. I of II, transcript of July 21, 2005; State Rec., Vol. I of II, minute entry dated July 21, 2005.

[9] Supplemental State Rec., Vol. II of II.

which was denied on February 23, 2006.[10] He then filed with the Louisiana Supreme Court a related writ application which was denied on November 9, 2006.[11]

On January 15, 2007, petitioner filed this federal application for *habeas corpus* relief.[12]  In support of his application, petitioner claims that both his trial and appellate counsel were ineffective.  The state does not contend either that petitioner's application is untimely or that he failed to exhaust his state court remedies.  Accordingly, the Court will address his claims on the merits.

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of,

---

[10]   <u>State v. Franklin</u>, No. 2005-K-1460 (La. App. 4th Cir. Feb. 23, 2006); Supplemental State Rec., Vol. I of II.

[11]   <u>State v. Franklin</u>, 941 So.2d 33 (La. 2006) (No. 2006-KP-0877).

[12]   Rec. Doc. 3.

clearly established Federal law, as determined by the Supreme Court of the United States."  28

U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.   The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1); Hill, 210 F.3d at 485.

<u>Facts</u>

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> Sergeant Allan Wall, with the Lafourche Parish Sheriff's Office, testified at trial that he had worked in an undercover narcotics capacity for twenty-one of the twenty-seven years he had  been with the sheriff's office.  On the evening of August 1, 1997, Sergeant Wall was working in an undercover capacity in Plaquemines Parish along with two deputies, Kelly Gonzales and Lawrence Arceneaux.  After being issued funds, the three drove in a rental car to the Fleur de Lis lounge.  There, Sergeant Wall made contact with David Wayne

Simpson, who informed him that he could get anything that the officers wanted. Simpson and the three deputies exited the lounge, entered the rental car, and drove to a nearby gas station-store just north of the highway, on the other side of the highway. The deputies told Simpson that they wanted forty dollars worth of cocaine. Simpson exited the car and made a telephone call. Upon his return, Simpson directed the officers to drive to Boothville. Sergeant Wall testified that he observed his backup team, Deputies Morris Roberts and Shelby Lavergne, driving behind him as he proceeded down the highway. At Simpson's direction, Sergeant Wall turned off Highway 23 onto Rose Pansy Lane, toward the Mississippi River and River Road or old Highway 23. He turned right at River Road, turned around, and then dropped Simpson off, after Simpson was given the money. As the officers drove back toward Rose Pansy Lane, they observed Officers Roberts and Lavergne on River Road, and drove past them. Sergeant Wall drove back a few minutes later to pick up Simpson, who entered the car and gave some crack cocaine to Officer Gonzales. Sergeant Wall subsequently dropped off Simpson and met with Officers Roberts and Lavergne, to whom they transferred the crack cocaine.

Sergeant Wall admitted on cross examination that he did not know whether Simpson had any drugs on his person at the time of the initial encounter in the lounge, and further testified that he had never met Simpson before that night. Sergeant Wall further admitted that this was not a "controlled buy," meaning one in which an informant is given marked money to purchase narcotics from a suspected seller. He admitted that in such cases, if informants are not frisked prior to making the purchase, it is possible that the drugs they claim they purchased had actually been in their possession prior to the alleged sale. Sergeant Wall conceded that it was possible that Simpson returned to the car carrying the money he had been given to purchase cocaine. Sergeant Wall did not see Franklin at the scene of the purported street sale, nor did he see anyone in the area selling drugs.

Deputy Gonzales was with Sergeant Wall when Sergeant Wall met Simpson in the Fleur de Lis lounge. After Simpson directed Sergeant Wall to turn off Highway 23 toward River Road, Deputy Arceneaux gave Simpson forty dollars, twenty dollars of which came from Deputy Gonzales. Deputy Gonzales testified that after they picked up Simpson, he handed Deputy Gonzales three loose pieces of rock-like substances believed to be cocaine. The officers dropped Simpson off at his residence, and within minutes met with Deputies Roberts and Lavergne, to whom they transferred

custody of the cocaine.  Deputy Gonzales admitted that he did not know whether Simpson had cocaine on his person prior to allegedly making the purchase, or whether Simpson had any cash on his person when he returned.

Deputy Arceneaux testified that prior to leaving the area of the Fleur de Lis Lounge, Simpson made a telephone call from a nearby convenience store, and told his prospective customers that everything was okay.  After Simpson directed Sergeant Wall to the location, Deputies Arceneaux and Gonzales each gave him twenty dollars.  Simpson returned and handed Deputy Gonzales the cocaine.  Deputy Arceneaux testified on cross-examination that after Simpson exited the vehicle he walked through a wooded area.  The deputy did not recall whether there were any streetlights on the lane when Simpson exited the car.

Deputy Lavergne testified that Deputy Arceneaux was wearing a wireless microphone on the night in question, allowing Deputies Lavergne and Roberts to overhear conversations between the three undercover deputies and Wayne Simpson.  He overheard Sergeant Wall and Simpson discuss a drug transaction inside of the Fleur de Lis Lounge.  The three undercover deputies and Simpson left the lounge, and Simpson made a telephone call at a convenience store.  When Simpson returned to the car, he indicated that he had called someone and that he could get the deputies whatever they wanted.  Deputies Lavergne and Roberts followed the four men down Highway 23 until they turned off on Rose Pansy Lane.  They overheard Simpson tell Sergeant Wall to stop when Sergeant Wall's car was at the back of Rose Pansy Lane, by River Road.  Simpson exited the vehicle and Sergeant Wall drove off.  Deputies Lavergne and Roberts followed Sergeant Wall's vehicle down Rose Pansy Lane, and then headed back toward Highway 23.  After passing Simpson, Deputy Lavergne testified he observed a fire in a fifty-gallon drum on the side of the road.  A person he recognized as Franklin was standing by the drum, near a parked car.  Deputy Lavergne said he recognized Franklin from previous dealings with him.  He testified that Franklin was no more than six feet away from him on the driver's side of the vehicle as he was driving past.  He observed that the weather was clear, and his headlights were on.  He answered in the negative when asked whether there was any question in his mind that Franklin had been the person standing next to the barrel.  Deputy Lavergne further testified that he stuck his hand up and waved so that his hand would block Franklin's view of his face as he drove past.  Deputy Lavergne testified that he continued to

Highway 23, where he turned around and immediately came back down Rose Pansy Lane.  As he approached the flaming barrel, he observed Simpson cross over to Franklin's side of the lane and hand him something, possibly money.  Franklin then handed something to Simpson.  Simpson turned around, crossed the lane, and proceeded back toward River Road.  Deputy Lavergne testified that there were no persons in the area other than Franklin and Simpson.  He testified that to the best of his knowledge, the three undercover deputies had only made one purchase of cocaine from Simpson from the time they left the Fleur de Lis Lounge with Simpson to the time they met with himself and Deputy Roberts after the purchase.  Deputy Lavergne identified Franklin during trial.

When Deputy Lavergne was asked whether there were any streetlights on Rose Pansy Lane, he first replied in the negative, then qualified his answer by saying, "not that he could recall".  He admitted that the fire in the barrel was behind Franklin, and the fire did not illuminate Franklin's face.  He admitted that Franklin was never directly in front of his vehicle's headlights.  When asked if he could see how much money Simpson gave Franklin, Deputy Lavergne replied that he could not see whether it was twenty or fifty dollars, although he testified that it looked like paper currency.

Plaquemines Parish Sheriff's Office Deputy Morris Roberts confirmed the testimony of Deputy Lavergne, with whom he was driving on the night in question.  He testified that even though it was 10:30 p.m., he could identify Franklin because the headlights of the car were shining on him.  When asked whether there was any doubt in his mind whether he had witnessed a drug transaction and that Franklin and Simpson were the two individuals involved, Deputy Roberts replied that Franklin was the person he had seen "with the hand to hand" with Simpson.  Deputy Roberts also admitted that it was dark on Rose Pansy Lane that night, and that he recognized Franklin because he had stopped him on a traffic violation approximately one month before the alleged drug deal.  Deputy Roberts testified that he had participated in making drug arrests on Rose Pansy Lane on two other occasions prior to this incident.

The Plaquemines Parish Sheriff's Office Evidence Custodian, Deputy James W. Bridges, testified at trial identifying and establishing the chain of custody for three white-colored rock-like substances contained in a sealed plastic bag with Franklin's name on it.

Edgar Dunn, with the Jefferson Parish Sheriff's Office, was qualified at trial by stipulation as an expert in the field of forensic

chemistry.  Mr. Dunn testified that he performed "color metric" and "micro-crystalline" tests on all three pieces of the rock-like substance, and a "mass spectrometer" test on two randomly selected pieces.  All tests were positive for cocaine.  Defense counsel stipulated that the substances were cocaine.[13]

<u>Ineffective Assistance of Counsel</u>

Petitioner claims that both his trial and appellate counsel were ineffective.  In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  <u>See</u> <u>Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  <u>See</u> <u>Strickland</u>, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide

---

[13] <u>State v. Franklin</u>, No. 2000-KA-2097, at pp. 1-6 (La. App. 4th Cir. Feb. 13, 2002) (footnote omitted) (unpublished); State Rec., Vol. I of II.

range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5ᵗʰ Cir. 1986);

Mattheson v. King, 751 F.2d 1432, 1441 (5ᵗʰ Cir. 1985).

       The appropriate standard for determining prejudice varies slightly depending on

whether the petitioner is challenging the actions of trial or appellate counsel.  In order to prove

prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to

undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice

occurred, courts must review the record to determine "the relative role that the alleged trial errors

played in the total context of [the] trial."   Crockett, 796 F.2d at 793.  In order to prove prejudice

with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable

probability that he would have prevailed on appeal but for his counsel's deficient representation.

Briesno v. Cockrell, 274 F.3d 204, 207 (5ᵗʰ Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286

(2000).  Therefore, petitioner must demonstrate a reasonable probability that, if appellate counsel's

performance had not been deficient in the manner claimed, the appellate court would have vacated

or reversed the trial court judgment based on the alleged error.  Briesno, 274 F.3d at 210.

       Petitioner bears the burden of proof when asserting an ineffective assistance of

counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel

was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5ᵗʰ Cir. 1993); see also Clark v. Johnson,

227 F.3d 273, 284 (5ᵗʰ Cir. 2000).  If a court finds that petitioner has made an insufficient showing

as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may

dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

Petitioner claims that his trial counsel was ineffective in failing to (1) call David

Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state

court on such claims unless the state court's decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States."  28 U.S.C. § 2254(d)(1).

Petitioner claims that his trial counsel was ineffective in failing to (1) call David

Wayne Simpson to testify for the defense and (2) make objections and file motions.  Those claims

were carefully and thoroughly considered by the Louisiana Fourth Circuit Court of Appeal in the

last reasoned state court judgment addressing the claims.  That court ultimately determined that the

claims had no merit, holding:

> At a hearing on Franklin's [post-conviction] application,
> David Wayne Simpson ("Simpson") stated that testified at his own
> trial that Franklin was not the individual responsible for the
> distribution of cocaine in connection with Franklin's case. [FN 4]
> Simpson identified his 2003 affidavit, in which he declared that
> Franklin was not the person responsible for distributing the cocaine.
> He stated that he did not testify at Franklin's trial, and he was not
> contacted about testifying at the trial, noting that he had left
> Plaquemines Parish at that time.
>
>> [FN 4] According to the court's opinion, Simpson at
>> his separate trial testified and denied that either the
>> person he called from the pay phone or the person
>> who sold him the rocks of crack cocaine was
>> Franklin.  State v. Simpson, 01-1850, p. 6 (La. App.
>> 4 Cir. 10/16/02), 829 So.2d 650, 655.

On cross-examination, Simpson said that he believed that he had told Franklin's trial counsel at one time that Franklin did not sell the drugs to him; Simpson thought it unusual that he was not subpoenaed for trial.  Simpson admitted that he had run because he was scared and knew that he was guilty, but stated that Franklin's attorney did nothing to cause him to flee.

Franklin testified that his trial counsel called no witnesses on his behalf at trial, although his counsel said that he had talked to Simpson.  Franklin stated that he had told his attorney that Simpson's testimony would have been favorable.  Franklin agreed that the jury had been deadlocked, and remembered a discussion about the State's motion for mistrial.  Franklin denied that his trial counsel discussed with him that he could concur in the state's motion.

Franklin admitted that the issues of the deadlocked jury and the mistrial were raised on appeal and found to lack merit.  He conceded that his conviction had been affirmed, but said that the appellate court also preserved a couple of claims relating to ineffective assistance of counsel.

The trial court denied the application for post-conviction relief, finding that Franklin had failed in his burden of proof:

> The Court declares that I think I've taken the same position apparently that the Court of Appeals [sic] took, that this was a vague statement made by Mr. Franklin to come up with a defense to say that he was with an alibi witness and his lawyer didn't subpoena that person.  That alibi witness as I reflect what you presented to me today, still has not been named.

In State v. Bertrand, 04-1469, p. 5 (La. App. 4 Cir. 12/15/04), 891 So.2d 752, 756, the court set out the standard of proof in ineffective assistance of counsel claims:

> Ineffective assistance of counsel claims are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  State v. Brooks, 94-2438, p. 6 (La. 10/16/95), 661 So.2d 1333, 1337 (on rehearing) and State v. Robinson, 98-1606, p. 10 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 126.  In order to prevail, the defendant must show both that:   (1) counsel's performance was deficient; and (2) he was prejudiced

by the deficiency.  <u>Brooks</u>, supra.  Counsel's performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  <u>Strickland</u> at 466 U.S. at 686, 104 S.Ct. at 2064.  Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial.  To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different; "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u>, 466 U.S. at 694, 104 S.Ct. at 2067.

Franklin argues that if his counsel failed to investigate for any alibi witnesses, he was ineffective; if he learned of the alibi witness after trial, he was ineffective in failing to file post-trial motions to preserve the error for review.  The only witness mentioned, whether exculpatory or alibi, is Simpson, who admitted that he had fled the parish to avoid going to jail.[FN 5]  Once Simpson had fled, there was no way to make him appear to testify at Franklin's trial.  If Simpson was the alibi witness not allowed to testify, it appears that he was outside of the parish at the time,[FN 6] and trial counsel could not have called him to the stand.  Additionally, in his 27 October 2003 affidavit, Simpson did not declare that he would have testified at Franklin's 1999 trial, and no other proof that Simpson was willing and available to testify for Franklin has been submitted.

[FN 5] On 1 December 1998, the trial court released Simpson from his bail obligation, and his trial did not commence until 3 January 2001.  Franklin's trial concluded on 7 April 1999.

[FN 6] In his statement of the facts, Franklin notes that at trial right before the state rested, it called David Simpson to the stand, but he was not present.  At the evidentiary hearing, the prosecutor asked Simpson if he had been subpoenaed to testify at Franklin's trial, and he answered:  "No sir.  I never got subpoenaed."  In the discussion of his claims,

Franklin does not mention the state's attempt to call the codefendant to the stand.

Even if Simpson had been within the jurisdiction, he was Franklin's codefendant charged with the same offense. Before testifying at his trial, Simpson acknowledged his prior convictions for possession of marijuana and for four counts of simple burglary and eleven counts of illegal possession of stolen things. State v. Simpson, at p. 5, 829 So.2d at 655. Simpson's testimony that Franklin was not the distributor would have been questionable. Because the credibility of the codefendant would have been suspect, trial counsel's decision not to put Simpson on the stand may have been part of his trial strategy. If an alleged error falls within the ambit of trial strategy, it does not establish ineffective assistance of counsel. State v. Vance, 03-1946, p. 8 (La. App. 4 Cir. 6/30/04), 879 So.2d 862, 868; State v. Bienemy, 483 So.2d 1105, 1107 (La. App. 4 Cir. 1986). Simpson was also entitled to invoke his privilege against self-incrimination; he could not have been compelled to testify. U.S. Const. amend. V; La. Const. art. 1, § 16; State v. Jordan, pp. 10-11 (La. App. 4 Cir. 9/16/98), 719 So.2d 556, 564. We find that Franklin failed to carry his burden of proof that trial counsel was ineffective by failing to have Simpson testify at Franklin's trial.

Although Franklin claims that trial counsel did not file a motion for post-verdict judgment of acquittal or motion for a new trial, according to the court's unpublished opinion, a motion for new trial was filed. However, we find that Simpson's proposed testimony was not "newly discovered evidence" within the meaning of La. C.Cr.P. art. 851(3), which would have warranted a new trial, because Franklin testified that he told his attorney about Simpson's proposed testimony before his trial. Simpson's affidavit was dated 27 October 2003, long after the denial of Franklin's motion for new trial on 15 July 1999. Additionally, no other newly discovered evidence was specified in Franklin's motion, and Franklin has not mentioned any other evidence in the application for post-conviction relief filed below or his writ application filed here.

Franklin also argues that counsel did not move for a mistrial or ask for a jury admonition when Deputies Lavergne and Roberts mentioned that they knew Franklin because of prior contact with him. Actually, Deputy Lavergne testified that he knew Franklin because he had "dealings with him" in the past, and Deputy Roberts explained that he had stopped Franklin for a traffic violation about a month before the alleged drug deal. According to the court's unpublished

opinion, during trial, defense counsel approached the bench, argued that the testimony constituted a reference to other crimes, and asked that the deputy not be questioned further on the subject. The trial court asked the prosecutor if he understood "that," and the prosecutor replied in the affirmative. Defense counsel then thanked the court, and the trial court overruled the objection in front of the jury. At no time did defense counsel move for a mistrial or request that the jury be admonished in connection with this statement by Deputy Lavergne. Although the trial court overruled the objection for the record, the record indicates that defense counsel had no desire to have either a mistrial declared or have the jury admonished. None of the Code of Criminal Procedure articles pertaining to mistrials, articles 770, 771 or 775, impose a duty upon a trial court to admonish a jury or grant a mistrial on its own motion.

However, jurisprudentially, when a defendant objects, and the objection is overruled, the defendant is not required to move for an admonition or mistrial to preserve his rights on appeal. State v. Coleman, 02-1000, at p. 20, fn. 3 (La. App. 4 Cir. 9/25/02), 828 So.2d 1130, 1142, fn. 3, writ denied, 03-2533 (La. 9/24/04), 882 So.2d 1153; State v. Baylis, 388 So.2d 713 (La. 1980). Regardless, we find that the remarks did not constitute references to other crimes that would have necessarily warranted a mistrial if trial counsel had made such a motion. Such decisions are often considered part of counsel's trial strategy, which cannot establish ineffective assistance of counsel.

Franklin also claims that trial counsel failed to preserve another error when the court allowed both the handwritten map and the police report to go into the jury room during deliberations. However, Franklin makes no further argument. This claim was raised on appeal and we noted that the trial court denied access to the police report when the state and defense counsel both agreed that it should not be sent into the jury room. The court found no merit to the claim because Franklin had concurred in the decision and was precluded from raising it on appeal under La. C.Cr.P. art. 841(A).

La. C.Cr.P. art. 793(A), which relates to the use of evidence in the jury room, provides:

> Except as provided in Paragraph B of this Article, a juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of

a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.

The trial court has discretion under this article when the jurors request access to a document when a physical examination thereof is required.  Without a description of Sgt. Wall's map [FN 7] and Franklin's argument relating to how the jury's access to the map(s) affected the verdict, this claim must be denied on the showing made.  The decision to allow the jurors to access the map is not reversible error.

[FN 7] Franklin does not mention Deputy Lavergne's map, which was also allowed into the jury room.  The second map was discussed in the unpublished appeal opinion.

Franklin also argues that trial counsel was ineffective when he failed to join the state's motion for a mistrial when the jury sent the trial court a note stating that there was hung jury with a vote of eight to four.  He raised that claim on appeal.  The following was the discussion in the court's unpublished opinion:

In his fifth assignment of error, Franklin asserts that the district court erred in denying the State's Motion for Mistrial, made after the jury informed the district court that it was deadlocked, and he further alleges that his defense counsel was ineffective in failing to join in the motion.  However, his argument is directed only to the claim of ineffective assistance of counsel.

The jury sent out a note at 6:55 p.m., having retired to deliberate at 5:12 p.m., informing the district court that they were a hung jury, with a vote of eight to four.  There was no indication whether the vote was toward conviction or acquittal.  The district court noted that it could not dismiss the jury at that time.  A bailiff was directed to advise the jury to deliberate another hour.  The bailiff informed the district court that the jurors had been hopelessly

deadlocked for the last one and one-half hours. At that time, the State moved for a mistrial on the ground that there was a defect in the proceedings, as the district court and the parties had received notice of the vote count, and on the second ground that the jury was unable to agree upon a verdict. Defense counsel suggested that the district court could order a mistrial, but that was not mandatory. When the district court questioned defense counsel as to whether any conduct had been committed on the part of the jury that would prejudice Franklin, defense counsel replied that he did not believe so. Defense counsel further stated that he believed the district court was correct in finding that the jury should deliberate further because it had only deliberated for two hours and that there were no grounds for a mistrial. The State argued that Franklin would not be prejudiced by the district court declaring a mistrial. The district court denied the State's motion, finding that, as the jury had been out for only two hours, to do so without further deliberations would jeopardize the case and prejudice Franklin. The district court implicitly found no merit to the argument that the jury's advising the district court of its vote count created a defect in the proceedings. After resuming deliberations, the jury notified the district court approximately one hour later, at 8:00 p.m., that it had reached a verdict.

La. C.Cr.P. art. 775 provides in pertinent part that a mistrial may be ordered when (1) the defendant consents thereto; (2) the jury is unable to agree on a verdict; and (3) there is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law. Additionally, La. C.Cr.P. art. 775 states that "a mistrial <u>shall</u> be ordered ... when the State and the defendant jointly move for a mistrial." (<u>emphasis added</u>) Thus, based solely on this latter provision, had defense counsel joined in the State's motion for mistrial, the district court would have been required to grant a mistrial. Franklin further argues that there were solid grounds for a mistrial, "as discussed by the State."

Because the court preserved the relater's right to raise the issue on post conviction relief, it must be considered.

We cannot rule out the possibility that defense counsel made a tactical decision not to join the state in its motion for mistrial. First, the general rule is that where the trial court declares a mistrial without the defendant's consent, and where the mistrial is not based on one of the grounds listed in La. C.Cr.P. art. 775, the action is considered an illegal dismissal, and any further prosecution of that defendant for the same criminal conduct is barred by double jeopardy. State v. Joseph, 434 So.2d 1057, 1060 (La. 1983); State v. Simpson, 371 So.2d 733, 736 (La. 1979). La. C.Cr.P. art. 591 provides that no person shall be twice put in jeopardy of life or liberty for the same offense except, with respect to mistrials, when there has been a mistrial legally ordered under the provisions of La. C.Cr.P. art. 775, or so ordered with the express consent of the defendant.

Even assuming that the vote count in defendant's case was eight for conviction and only four for acquittal, defense counsel could have refrained from joining in the state's motion for mistrial in hopes that the trial court nevertheless might grant the state's motion. Had the court done so, defendant could later argued that double jeopardy barred a retrial as the mistrial had been improperly granted. Further, aside from the remote possibility that the trial court would have granted the state's motion in the face of defense opposition, defense counsel might have felt confident at the very least the jury would remain deadlocked, and a mistrial would be declared.

Nevertheless, this court has previously recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bordes, 98-0086, p. 8 (La. App. 4 Cir. 6/16/99), 738 So.2d 143, 147, quoting State v. Bienemy, 483 So.2d 1105, 1107 (La. App. 4 Cir. 1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." Id. quoting State v. Brooks, 505 So.2d 714, 724 (La. 1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337 (1987).

Franklin's trial counsel did not testify at the evidentiary hearing; therefore, his reasons for failing to join with the state in its motion for a mistrial are still unknown. The trial court did not specifically focus on that claim, but it concluded at the end of the

- 17 -

hearing that Franklin had failed to carry his burden of proof.  As
noted by the court's unpublished opinion, the jury did not indicate to
the court whether the vote was eight to convict, and four to acquit, or
the other way around.  Trial counsel's decision may be considered
trial strategy, and that decision cannot establish ineffective assistance
of counsel.

        We find that Franklin did not carry his burden on his
application for post-conviction relief.  Deputy Lavergne testified that
he saw Franklin standing by a fire in a drum as he drove past on Rose
Pansy Lane with his headlights on; as he drove back the deputy saw
Simpson hand something, which looked like paper currency, to
Franklin, who handed something to Simpson, who then walked away.
The deputy stated that he knew Franklin from previous dealings with
him.  Deputy Roberts confirmed Deputy Lavergne's testimony and
identified Franklin as the person involved in what he believed to be
a drug transaction with Simpson.  Deputy Roberts stated that he was
able to identify Franklin because he had stopped Franklin about a
month before on a traffic violation.  We find that Franklin did not
carry his burden of proving that the testimony of codefendant
Simpson, that Franklin was not the cocaine distributor, would have
changed the outcome of the trial.  We further find that Franklin did
not carry his burden in proving that his trial counsel was ineffective
for the failure to file any post-trial motions.[14]

Petitioner's claim that defense counsel was ineffective for failing to call Simpson to

testify clearly has no merit for several reasons.

        First, at the time of petitioner's trial, Simpson was on the lam and his whereabouts

were unknown.  Even if counsel were inclined to call him as a witness, it would have been

impossible to serve him with a subpoena or otherwise secure his presence for trial.  Counsel cannot

---

[14] State v. Franklin, No. 2005-K-1460, at pp. 6-14 (La. App. 4th Cir. Feb. 23, 2006);
Supplemental State Rec., Vol. I of II.  The Louisiana Supreme Court denied petitioner's related writ
application without assigning reasons.  State v. Franklin, 941 So.2d 33 (La. 2006) (No. 2006-KP-
0877).

be considered ineffective for failing to accomplish the impossible.  United States v. Cronic, 466 U.S. 648, 657 n.19 (1984).

Second, even if Simpson's presence could have been secured, petitioner's claim nevertheless fails because he has not made the required showing that Simpson would have agreed to testify.  Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002).[15]  Simpson was actively trying to avoid prosecution at that time, and it is therefore unlikely that he would have voluntarily testified regarding matters that would have conclusively established his own guilt.  Further, under the Fifth Amendment, he could not be compelled to so testify.

Third, even if Simpson would have agreed to testify, counsel still should not be considered ineffective for failing to call him.  There is a strong presumption that counsel's decision regarding whether to call a witness is one of trial strategy.  Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984); see also Green v. Cockrell, No. 02-20650, 2003 WL 21145722 , at *2 (5th Cir. Apr. 29, 2003) ("A strategic or tactical decision not to call particular witnesses does not constitute ineffective assistance."); Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978) ("[C]omplaints based upon uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.").  The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on matters of trial tactics through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a

---

[15]  At the evidentiary hearing in state court, Simpson was not expressly asked if he would have agreed to testify at petitioner's trial.

wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689.

That presumption is particularly applicable in instances such as this. As the United States First Circuit Court of Appeals has noted:

> The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony. The witness may not testify as anticipated or the witness's demeanor or character may impress the jury unfavorably and taint the jury's perceptions of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused. Where the prosecution's case is less than compelling ..., the risk of "rocking the boat" may warrant a decision by trial counsel to forego the presentation of further defense testimony, even favorable testimony. Johnson v. Lockhart, 921 F.2d 796, 800 (8th Cir.1990) ("since the government has the burden of proving guilt beyond a reasonable doubt, it may not be necessary for the defense to introduce evidence to meet the constitutional requirement of effective representation"); cf. [United States v.] Natanel, 938 F.2d [302, 310 (1st Cir. 1991)] ("additional arguments could only impair [a] client's seemingly secure position.... In litigation, as in life, there is much to be said for such maxims as 'if it ain't broke, don't fix it,' and 'quit when you're ahead'").

Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993) (citations omitted). The court continued:

> Reasonably competent trial counsel might well have determined that the best prospect for acquittal lay in discrediting the government's witnesses, rather than presenting additional testimony which could appear to legitimate the government's case or raise questions about the defense not previously suggested by the government's evidence.

Id. Under the facts of this case, where the evidence was hardly unassailable, counsel simply cannot be considered deficient in opting simply to try to discredit the state's case rather than taking the chance of alienating the jury by presenting the questionable testimony of a codefendant with at least *sixteen* prior convictions as the sole, inherently suspect defense witness.

Regarding counsel's failure to move for a mistrial or to join in the prosecution's motion for a mistrial, a decision not to move for a mistrial is also clearly one of trial strategy. See Hatch v. Lambert, 215 Fed. App'x 614, 615 (9th Cir. 2006).  Further, for the reasons noted by the state court, it would have been a perfectly reasonable tactic for counsel not to seek a mistrial in this case.  Accordingly, again, it would be inappropriate for this Court to use hindsight to second-guess that strategic choice.

As to the other contentions regarding trial counsel's failure to file certain motions or lodge specific objections, petitioner is once again quibbling with what are inherently strategic choices.  Further, in any event, petitioner clearly has not shown that he was prejudiced by counsel's choices.  As noted by the state court, the proposed motions and objections had little or no merit; therefore, counsel should not be considered ineffective in failing to pursue them.  United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").  Petitioner simply cannot show that there is a reasonable probability that if counsel had only filed the motions or lodged the objections, the result of the proceeding would have been different.

Lastly, perhaps recognizing that the trial counsel's individual "errors" do not warrant relief, petitioner argues that the "errors," when considered collectively, do.  This Court disagrees.

When, as here, the individual contentions are meritless, that result cannot be changed simply by asserting them collectively.  United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006), cert. denied, 127 S.Ct. 2029 (2007); Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir. 2000).  As the United States Fifth Circuit Court of Appeals noted with respect to analogous claims of cumulative error: "Twenty times zero equals zero."  Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987).

Lastly, petitioner also claims that his appellate counsel was ineffective.  The only specific contention made in connection with that claim is that counsel failed to adequately raise on appeal the issue that Simpson could have provided testimony beneficial to the defense.  That claim is apparently based on the Louisiana Fourth Circuit Court of Appeal's decision on direct appeal criticizing counsel's argument:

> Franklin argues that he argued to the district court that the identity of the witness was "newly discovered evidence."  Franklin did file a Motion for New Trial in which he set forth the general ground of newly discovered evidence.  A hearing was held and the district court denied his Motion for New Trial.  In the event that Franklin was arguing that the alibi witness was the newly discovered evidence cited in his Motion for New Trial, he should have assigned as error on appeal the district court's failure to grant his Motion for New Trial.  He does not.[16]

However, as previously noted, when the Court of Appeal revisited this issue in its subsequent opinion concerning the denial of post-conviction relief, the court held that "Simpson's proposed testimony was not 'newly discovered evidence' within the meaning of La. C.Cr.P. art. 851(3), which

---

[16]  State v. Franklin, No. 2000-KA-2097, at p. 7 (La. App. 4th Cir. Feb. 13, 2002) (unpublished); State Rec., Vol. I of II.

would have warranted a new trial ...."[17]  Therefore, even if counsel performed deficiently in arguing the assignment of error, it ultimately had no merit in any event.  Accordingly, petitioner's claim necessarily fails because he cannot make the required showing that there is a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation.  Briesno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).

For all of the foregoing reasons, this Court finds that petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects those claims.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Franklin Colbert be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

[17]  State v. Franklin, No. 2005-K-1460, at p. 9 (La. App. 4th Cir. Feb. 23, 2006); Supplemental State Rec., Vol. I of II.  The Louisiana Supreme Court denied petitioner's related writ application without assigning reasons.  State v. Franklin, 941 So.2d 33 (La. 2006) (No. 2006-KP-0877).

a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this eighteenth day of September, 2007.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**